## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Duane Eric Burnett,

Debtor.

Case No. 21-02018-dd

Chapter 7

## ORDER SANCTIONING RECOVERY LAW GROUP, APC

This matter came before the Court on the motion of the Acting United States Trustee for Region Four (the "UST") for the Court to review the conduct of Recovery Law Group, APC ("Recovery Law"), to order the cancellation of its retainer agreement with the debtor, to disallow and require the return of fees paid to Recovery Law, and to grant other relief as may be appropriate pursuant to 11 U.S.C. §§ 105(a), 329(b), 526, 528, Fed. R. Bankr. P. ("Rules") 2016 and 2017, and the Court's inherent authority to address attorney conduct in the above-captioned debtor's case, including civil penalties and injunctive relief (the "Motion").  No objections were filed to the Motion.

A hearing on the Motion was held on February 17, 2022 (the "Hearing").  Present at the Hearing was Linda Barr, attorney for the UST, and Julie Smoak, a bankruptcy auditor with the UST.  Neither William Joseph Virgil Barr, attorney of record for the debtor ("Attorney"), nor any representative from Recovery Law was present.   At the Hearing, 13 exhibits were admitted on motion of the UST, and Ms. Smoak testified.   The Court's findings of fact and conclusions of law follow.[1]

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.  *See* Fed. R. Bankr. P. 7052, 9014(c).

## JURISDICTION, VENUE AND STANDING

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The

Motion was filed pursuant to 11 U.S.C. §§ 105[2], 329, and 526, 528, Rules 2016 and 2017, and

Local Civil Rule 83.IX.01 DSC and the Court's inherent authority.  This matter is a core

proceeding, and the Court has the authority to enter a final order.  28 U.S.C. § 157(b)(2)(A).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND AND FACTS

### Prior Order Sanctioning Recovery Law

On November 3, 2021, the court issued an order sanctioning Recovery Law (the

"*Green* Order").  *See In re Green*, C/A No. 20-03190-hb (Bankr. D.S.C. November 3, 2021).

The *Green* Order specifically found that Recovery Law solicited clients in South Carolina over

the internet with a website misrepresenting that an experienced South Carolina bankruptcy

attorney or "local bankruptcy expert" was available to assist.  *Green* Order at 25.  The court

noted that Recovery Law's business model had its pre-petition services rendered to the clients

either by attorneys not admitted to practice before the Court or non-attorney personnel not being

supervised by an attorney admitted to practice before the Court.  *Green* Order at 8, 10, 13, 25.

The court noted this conduct in the *Green* case as well as three chapter 13 cases.   The court also

found that "Recovery Law's business practices, lack of due diligence, and lack of regard for the

truth in its advertisements provided a blueprint for these problems."  *Green* Order at 27.

---

[2] All further references to 11 U.S.C. § 101 *et seq*. will be by section number only.

## Recovery Law

Recovery Law is a domestic corporation formed in Nevada. According to the online records for the Nevada Secretary of State, Recovery Law's status is shown as "default." The registered agent, president, secretary, treasurer, and director are shown as Nicholas Wajda at 871 Coronado Center Drive, Suite 200, Henderson, NV 89052.[3] Mr. Wajda is the sole owner of Recovery Law. Ms. Smoak testified that the South Carolina Secretary of State's online records do not show that Recovery Law is registered to do business in South Carolina.

Recovery Law advertises on the internet, and its website states that it is located across the United States and has experienced attorneys. At the time the debtor was seeking bankruptcy assistance, Recovery Law's website provided that the prospective client should "click on your nearest location below and get connected with a local bankruptcy expert."[4] Recovery Law's website also emphasized its experience to prospective clients. The following are excerpts from Recovery Law's website that were admitted into evidence[5]:

> "With our in-depth legal understanding and years of experience, we have built our full arsenal of tools to assist you with your unique case."

> "Your case is safe in the hands of our dedicated and experienced attorneys. Throughout our years of practice, we have understood the legal system and laws to the core, and we have brought together the strategies and legal systems in a way that helps us to protect consumers and resolve the problems of our clients, uniquely."

> "A majority of the attorneys and solo practitioners or 'General Practitioners' do not have adequate experience required to provide

---

[3] UST Exhibit 10.
[4] UST Exhibit 11. Ms. Smoak testified that sometime after November 23, 2021, Recovery Law removed its reference to a local bankruptcy "expert" and changed it to a local bankruptcy attorney.
[5] UST Exhibit 12.

> reliable protection through the bankruptcy court code and laws.
> We are reliable and dependable with a combined 30 years of
> experience in providing successful protection to thousands of
> consumers in bankruptcy matters.  Besides that, we also offer
> highly personalized services to our valued clients that smaller
> firms and attorneys just can't provide due their limitations and
> practice. With case-specific evaluations and consultations, we help
> find solutions that do not rely on cookie cutter techniques.  With
> us, you can take the first step towards 720+ credit score and head
> to a brighter future today."[6]

On Recovery Law's website, Attorney is shown as the attorney for Recovery Law in South Carolina with over five years of experience.[7] Ms. Smoak testified that the South Carolina Bar website shows that Attorney was admitted to practice in South Carolina on January 26, 2021, and the website for the District Court for the District of South Carolina reflects that Attorney was admitted to practice before the Court on March 8, 2021.

**The Debtor's Case**

On August 1, 2021, the debtor filed for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Petition").  Part 7 of the Petition shows Attorney as the attorney of record.  Attorney's information in Part 7 does not show an affiliation with any law firm.  Attorney's electronic signature appears after the certification that Attorney "has no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect."[8]

Item 16 of the debtor's statement of financial affairs ("SOFA") shows the debtor paid Recovery Law $1,835 in 2020.  The Disclosure of Compensation shows that Attorney agreed to accept $1,500 for legal services and received $1,500 before the case was filed.  The Disclosure of Compensation does not show that Attorney has any affiliation with a law firm.[9]  The

---

[6] Ms. Smoak testified that this information was obtained from www.recoverlawgroup.com.  The information was last verified by Ms. Smoak on November 23, 2021.
[7] UST Exhibit 12, pp. 4 -5.
[8] UST Exhibit 1.
[9] UST Exhibit 1, p. 45.

Disclosure of Compensation also reflects that Attorney agreed to perform the following services in exchange for the fee:

<ol type="a" style="margin-left: 2em">
<li>Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;</li>

<li>Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;</li>

<li>Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.</li>
</ol>

Ms. Smoak testified that at his continued meeting of creditors on September 10, 2021, the debtor stated that he had completed his petition, schedules, and statements prior to the date of credit counseling. The debtor identified Mr. Wajda as an attorney who assisted him. Mr. Wajda is not admitted to practice before this Court. The debtor's certificate of credit counseling indicates the debtor completed the credit counseling course on March 24, 2021.[10]

According to item 16 of the debtor's statement of financial affairs, the debtor paid Recovery Law in 2020.[11] The Petition filed by the debtor provided that the debtor lived at 513 Caladium Way, Columbia, SC (the "Residence").[12] The debtor sold the Residence in April 2021.[13] The inclusion of the Residence as the place where the debtor lived further supports that the debtor's petition, schedules, and statements had been completed in March 2021. Thus, it appears that attorneys not admitted to practice before the Court would have reviewed the retainer agreement with the debtor,[14] consulted with the debtor about his financial situation, assisted the

---

[10] UST Exhibit 13.

[11] UST Exhibit 1, p. 33.

[12] UST Exhibit 1, p. 2.

[13] UST Exhibit 3.

[14] Ms. Smoak testified that the attorney for the UST requested on multiple occasions for Attorney to provide a copy of the retainer agreement between Recovery Law and the debtor and to provide the specific date(s) that the debtor made payment to Recovery Law. At the time of the Hearing, this information had not been provided. UST Exhibit 7.

debtor in deciding that bankruptcy was appropriate for his circumstances, assisted the debtor in deciding that chapter 7 was the best chapter under which the debtor should seek relief, explained the bankruptcy process to the debtor, collected information from the debtor to include in the schedules and statements, and completed a copy of the schedules and statements for the debtor to review.

The debtor filed the required schedules and statements in his case under penalty of perjury on August 1, 2021 (Doc. # 1) (the "Original Schedules").[15]  The Original Schedules show

the following:

a.      Item 1 of Schedule A/B shows the debtor does not own any real property.

b.      Item 12 of Schedule A/B shows the debtor owns no jewelry.

c.      Item 16 of Schedule A/B shows the debtor had no cash at the time of the bankruptcy filing.

d.      Item 17 of Schedule A/B shows that the debtor has three deposits of money:  a checking and savings account at Navy Federal Credit Union with balances of $50, and a checking account at Bank of America with a balance of $0.

e.      Schedule D lists Santander Consumer USA with a claim of $17,000 secured by an automobile and shows the debt was incurred in 2018.

f.      Schedule E/F lists Santander Consumer USA with a claim of $16,893 related to an automobile and shows the debt was incurred on "6/26/19".

g.      On Schedule I, the debtor shows that he is employed with Extend as a call center supervisor and has been employed there for four months.  For his spouse, the debtor inserted N/A.

h.      On Schedule J, the debtor shows $0 for rental or home ownership expenses.

---

[15]  UST Exhibit 1.

i.    In response to Item 2 of SOFA, the debtor checked "no" regarding whether he had lived anywhere other than where he lived now in the last three years.

j.    In response to Items 4 and 5 of SOFA, the debtor marked "no" in response to whether he had income in the current year and the two prior years.

k.    In response to item 8 of SOFA, the debtor checked "no" in response to whether he made a payment or transferred property on account of a debt that benefitted an insider.

l.    In response to item 18 of SOFA, the debtor checked "no" in response to whether he sold or transferred any property to anyone in the two years before the bankruptcy filing.

m.    In response to item 22 of SOFA, the debtor checked "no" in response to whether he had stored property in a storage unit within one year before the bankruptcy filing.

Ms. Smoak testified that the debtor's initial meeting of creditors was held on September 1, 2021. The chapter 7 trustee adjourned the meeting of creditors to September 10, 2021, due to the debtor's failure to furnish documents required to be provided to the chapter 7 trustee. Ms. Smoak testified that at the continued meeting of creditors on September 10, 2021 (the "Continued Meeting"), the debtor testified that he had income from employment in 2021; he had received unemployment income in 2020; and he received retirement income in 2019, 2020, and 2021. The Original Schedules reflected the debtor's retirement income on Schedule A/B and Schedule I disclosed the debtor's income from his employment. Despite these disclosures in the Original Schedules and the debtor's testimony of his sources of income in 2019 through 2021, the debtor checked "no" for any sources of income in responses to items 4 and 5 of SOFA in the Original Schedules.[16]

Ms. Smoak testified that at the Continued Meeting, the debtor testified he owned a watch and ring. He also testified that he moved out of the Residence in March and when he moved, he

---

[16] UST Exhibit 1, pp. 30-31.

took the clothes on his back and the items in storage.  Ms. Smoak testified that when the attorney

for the UST stated the online real property records showed the Residence was jointly owned,[17]

the debtor interjected that he was on the deed, but he had no financial responsibility.

On October 17, 2021, the debtor filed an amendment to the voluntary petition (the

"Amended Petition") and an amendment to SOFA (the "Amended Statement").[18]   At the time of

the Hearing, no amendments had been made to Schedule A/B.  The Amended Petition changed

the debtor's address to one in Virginia (the "New Address"), but the New Address did not

include an apartment number.  Ms. Smoak testified that a consent order the UST had been mailed

to the debtor was returned for an insufficient address using the New Address.

The Amended Statement changed the response to item 5 of SOFA to include the debtor's

retirement income and changed the response to item 18 of SOFA to disclose a transfer by the

debtor of an interest in the Residence to his separated spouse.  In the response, the debtor stated

that he did not receive any money from the sale of the Residence.[19]  The Amended Statement

also changed the response to item 22 of SOFA to disclose a storage unit being used by the debtor

and his spouse.  Despite the debtor's testimony at the Continued Meeting regarding his income

from employment and unemployment compensation, and the disclosure of the debtor's income

from employment on Schedule I, the Amended Statement failed to disclose this information.

The closing statement from the sale of the Residence shows that the sellers are both the

debtor and his non-filing spouse.[20]  The closing statement also shows that the transfer of the

Residence is to a third party and not a transfer between the debtor and his non-filing spouse.

---

[17] UST Exhibit 2.  Ms. Smoak testified that the online property information from Richland
County could be obtained in a matter of minutes, and that there was no charge for the
information.
[18] UST Exhibit 6.
[19] UST Exhibit 6, pp. 8, 9, and 11.
[20] UST Exhibit 3.

According to the closing statement, the sellers received $63,274.77 from the closing on April 26, 2021. A review of a Bank of America bank statement for an account ending in 5474 for the period of April 22, 2021 to May 19, 2021 shows that the bank account is titled in the names of the debtor and his non-filing spouse (the "BOA Account").[21] This statement has a deposit of $63,274.77 on April 26, 2021.[22] The information in the closing statement and the bank statement for the BOA Account into which the closing proceeds were deposited do not support the representation of facts in item 18 of the statement of financial affairs in the Amended Statement.

The Amended Petition and the Amended Statement include the debtor's electronic signature.[23] Ms. Smoak testified that the debtor was examined pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("FRBP") on November 15, 2021 (the "Exam"). At the Exam, the debtor testified that he had never seen the Amended Petition and Amended Statement, and he had not signed them. Ms. Smoak testified that the attorney for the UST requested that Attorney produce proof of the debtor's signature, however, at the time of the Hearing, no documents had been provided supporting the debtor's signature on the Amended Petition and Amended Statement.

Ms. Smoak testified that the debtor also stated at the Exam that he was no longer living at the New Address but had moved into a house with his daughter. As of the Hearing, the debtor's address is still shown as the New Address. The notice of hearing on the Motion and the deadline for objections was also served on the debtor at the New Address. The notice of hearing was

---

[21] UST Exhibit 4, p. 3.
[22] Ms. Smoak also testified that this bank statement showed payments to a storage facility and a payment to an apartment complex in Virginia known as Courthouse Square. UST Exhibit 4, pp. 4 and 5.
[23] UST Exhibit 6, pp. 6 and 14.

served on Attorney via notice of electronic filing and the Senior Counsel/Compliance Counsel for Recovery Law was served by mail.[24]

Ms. Smoak testified that a review of a bank statement for the BOA Account for the period of July 22, 2021 to August 20, 2021 showed that the debtor had an approximate balance of $42,332 on August 1, 2021 (the petition date).[25]   A review of this bank statement also showed deposits into the bank account from various employers of the debtor, the debtor's retirement income, and a deposit from his daughter for her portion of the rent.[26]   The bank statement also showed payments in an amount greater than $600 for a credit card payment and to the US Treasury.   Payments for a storage unit and a rent payment to Courthouse Square are also shown.[27]   The Original Schedules showed a balance of $0 for the BOA Account on Schedule A/B, no income for the debtor in the current year in response to item 4 of the statement of financial affairs, "no" in response to payments to a creditor in an amount of $600 or more in the 90 days before the bankruptcy filing, and "no" on whether the debtor had property stored in a storage unit in the year before the bankruptcy filing.

Ms. Smoak testified that the debtor stated he did not know what caused the delay in his bankruptcy filing after he retained Recovery Law.   He would call regarding the status of his case, and they would say they needed more documents.   He became concerned about the delay.

## ANALYSIS

Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent before the filing of the bankruptcy case.   *See In re Haynes*, 216 B.R. 440, 443 (Bankr. D. Colo.1997).   An attorney is required to perform a reasonable inquiry to

---

[24]  UST Exhibit 8, p. 2.
[25]  UST Exhibit 5.
[26]  UST Exhibit 5, p. 3.
[27]  UST Exhibit 5, p. 4.

include interviewing the client, requiring the client to produce relevant information, reviewing

the client's financial documents and other information, and resolving any inconsistencies prior to

filing the case. *In re Kincaid*, 2021 Bankr. LEXIS 3357 *24 (Bankr. C.D. Ill. 12/9/2021)

(discussing requirements under § 707(b)(4) and Rule 9011(b)(2)(3)).   Attorneys should exercise

reasonable care and diligent inquiry in providing the legal services. *In re Boland*, 2001 Bankr.

LEXIS 1848 *4, slip op. (Bankr. D.S.C. 5/24/2021) (discussing the use of Pacer in verifying

prior filings by debtors); *see also In re Cornelius,* 2005 Bankr. LEXIS 2741, slip op. C/A 05-

01833 (Bankr. D.S.C. July 8, 2005) (discussing the importance in disclosing the person signing

the documents and place where the debtor lives).  A reasonable investigation by counsel is ". . .

essential to the administration of the bankruptcy case because the court, the trustee, and creditors

are dependent upon debtors and their counsel providing accurate and complete information in the

petition and schedules . . ." *In re Beinhauer*, 570 B.R. 128, 137 (Bankr. E.D.N.Y. 2017) (citing

*In re Hanson*, 2015 Bankr. LEXIS 607, 2015 WL 891669, at *6 (Bankr. E.D.N.Y. Feb. 27,

2015).   In *Beinhauer*, the court noted that counsel should ask probing questions to elicit full and

complete disclosures and should check the petition and schedules for internal and external

consistency.

Rule 4002(b)(2) and (b)(3) requires the debtor to provide the chapter 7 trustee at the

meeting of creditors: (a) evidence of current income such as the most recent pay advice, (b)

copies of statements for each of the debtor's depository and investment accounts for the time

period that includes the date of the filing of the petition, and (c) the debtor's tax return for the

most recent tax year ending immediately before the commencement of the case (which is to be

provided seven days before the meeting of creditors).   Section 521(a)(1)(B)(iv) requires that the

debtor file copies of pay advices or other evidence of payment received within 60 days before the date of filing.

**<u>Section 329</u>**

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement of compensation paid or agreed to be paid for legal services related to a bankruptcy case. Section 329(b) permits the court to cancel the agreement and order the return of funds to the extent the compensation exceeds the reasonable value of such services. Section 329 and Rule 2017 "furnish the court with the express power to review payments to attorneys for excessiveness . . ." *In re Walters*, 868 F.2d 665, 667 (4th Cir. 1989) (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987). It is the attorney's burden to show the reasonableness of fees charged to a client. *In re Busche*, 2015 Bankr. LEXIS 3669 (Bankr. D.S.C. Oct. 27, 2015).

A fee agreement may be cancelled, and compensation denied under § 329(b), if an attorney fails to comply with disclosure obligations under § 329(a) and Rule 2016(b). *See In re TJN, Inc.,* 194 B.R. 400 (Bankr. D.S.C. 1996); *Turner v. Davis, Gellenwater & Lynch (In re Inc. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993). Attorneys representing debtors in bankruptcy cases have an affirmative duty to fully and completely disclose all fee arrangements and all payments. *See* § 329(a); FRBP Rule 2016(b).

In reviewing the services provided in the present case, the facts demonstrate that the debtor's Petition and Original Schedules contained numerous errors and omissions that could have been prevented if a reasonable inquiry had been undertaken to confirm the information contained in them was complete and truthful. If the debtor had been asked to confirm where he lived before the Petition was filed, or if the online real property records were checked to confirm ownership of the Residence, several material errors in the Petition and Original Schedules could

have been avoided.  The Petition and Original Schedules represented to the Court that the debtor

resided at the Residence, he had no ownership interest in the Residence, the debtor had not

moved in the last three years, and the debtor had not transferred any property in the two years

before the bankruptcy filing.  None of those representations were accurate.

The debtor is required to provide evidence of his current income such as the most recent

pay advice and is required to file copies of the pay advices received within 60 days before the

date of filing.[28]  FRBP Rule 4002(b)(2)(A) and § 521(a)(1)(B)(iv).  Recovery Law and Attorney

either did not have copies of the debtor's pay advices prior to the filing of the case, or they did

not review them.  A review of the debtor's pay advices would have shown that the debtor's

responses in the statement of financial regarding his historical income were incorrect.  The

debtor had income from wages and retirement income, but the debtor checked "no" to items 4

and 5 of SOFA in response to any income.  A mere review of the information in the Original

Schedules for inconsistencies would have identified the errors in responding that the debtor had

no historical income, because the debtor's pension income and wages from employment were

shown in Schedule B and Schedule I.

The debtor is required to provide copies of statements for each of the debtor's depository

and investment accounts for the time period that includes the date of the filing of the petition.

FRBP Rule 4002(b)(2)(B).   While the debtor is not likely to have a bank statement that includes

the petition date at the time of filing, the debtor can obtain the balance in the bank account by

calling or seeking information on the balance at an ATM.  With online banking, the debtor may

also print off activity in the bank account to the date of the bankruptcy filing.  However, it

---

[28]  FRBP Rule 1007(c) requires the pay advices to be filed within 14 days of the filing of the
petition.  The debtor's pay advices were not filed until August 31, 2021, after the UST filed a
statement regarding the deficiency.  UST Exhibit 9.

appears that none of those things occurred here.  The Original Petition reflected that the debtor

had a balance of $0 in the BOA Account.  A review of the bank statement for the period

including the petition date shows that the debtor had a balance of more than $42,000.[29]  A review

of a bank statement for the BOA Account also showed that it was a joint account into which the

debtor's income from his pension, employment, and a contribution to rent by his daughter were

deposited.  An attorney cannot merely receive copies of the debtor's financial documents and not

review them.[30]

Section 521(e)(2) of the Bankruptcy Code and Rule 4002(b)(3) requires that at least 7

days before the meeting of creditors, the debtor shall provide to the trustee a copy of the debtor's

tax return required under applicable law for the most recent tax year ending immediately before

the commencement of the case.  The debtor's original meeting of creditors was adjourned due to

the debtor's failure to provide required documents to the trustee.  A review of the tax return

would also have disclosed that the debtor had income in the last three years.

The Amended Petition and Amended Statement filed in this case did not correct the

errors and omissions discussed so far, but rather, further complicated them.  The debtor's address

was updated with an address that caused mail to be undeliverable due to the failure to include the

apartment number.  The debtor's employment income was still not included in response to item 4

of the Amended Statement.  The disclosure of the transfer of the Residence included statements

that were inconsistent with the facts.  The Amended Statement provided that the debtor

---

[29] This bank statement also referenced the address for the debtor and his wife as the apartment complex in Virginia that included an apartment number.

[30]  Additionally, had the debtor provided a copy of his most recent bank statement at the time of filing, a review would have shown the debtor's use of a storage unit and rent payments to an apartment complex in Virginia.  The Original Schedules showed the debtor did not make mortgage or rent payments on Schedule J and that he did not use a storage unit in the year before the bankruptcy filing.

transferred his interest to his wife and that he received none of the closing proceeds.  However,

the closing statement and online records for Richland County show that the debtor and his wife

transferred the Residence to a third party.  A review of the bank statement for the BOA Account

during the period of the closing shows that the proceeds were deposited into a joint account.  The

amended response also failed to disclose the amount of proceeds received from the closing.

Even more troubling is that the debtor testified at his examination under Rule 2004 that

he had not seen the Amended Petition and Amended Statement prior to November 15, 2021, and

he had not signed them.  FRBP Rule 1008 requires that all amendments to petitions, schedules,

and statements be verified or contain an unsworn declaration.  By filing the Amended Petition

and Amended Statement with the debtor's electronic signature, Attorney made a representation

to the Court that the debtor had reviewed the information and signed with the required

declaration regarding the truth and correctness of the information contained therein.  The filing

of a document with the debtor's electronic signature is a certification by an attorney that he has

appropriately obtained the signature.  *See In re Ray*, C/A No. 21-00861, slip op. *3, (Bankr.

D.S.C. Nov. 3, 2021); *see also In re T.H*., 529 B.R. 112, 139 (Bank. E.D. Va. 2015) (finding that

the filing of a document representing that the attorney has the debtor's signature is violative of

Rule 9011(b)).

These errors and omissions reflect that the services provided to the debtor fall below the

reasonableness standard, and the fees in this case are excessive.  While the errors and omissions

are the responsibility of Attorney as the attorney of record, the evidence demonstrated that

Recovery Law is also at fault.  The evidence presented in this case supports that the debtor

completed his petition, schedules, and statements in March 2021 with the assistance of an

attorney who is not admitted to practice before this Court and/or by non-attorney personnel who

were not supervised by an attorney admitted before this Court.[31]  As none of the individuals who had interacted with the debtor were able to file his bankruptcy case with this Court, Recovery Law utilized Attorney to file the case.  Despite its representations on its website that the local attorney was a bankruptcy expert, and the representation that Attorney had more than five years of experience, Attorney had been admitted to practice before the Court less than six months before the filing of the debtor's case.

Advising a debtor regarding which documents to file with the court and/or the completion of the bankruptcy petition, schedules and other pleadings constitutes the practice of law. Conduct constituting the practice of law includes a wide range of activities, including the preparation of legal instruments and advising clients of legal matters.  *See Ex parte Wilson*, 833 S.E.2d 840, 843 (S.C. 2019); *State v. Buyers Serv. Co., Inc.*, 357 S.E.2d 15, 17 (S.C. 1987); *State v. Despain*, 460 S.E.2d 576, 578 (S.C. 1995) (holding that the preparation of legal documents for presentation in family court constitutes the practice of law when the preparation involves the giving of advice, consultation, explanation, or recommendations on matters of law). "Unquestionably, advising a person to file bankruptcy, and under what chapter to file, constitutes legal advice that can only be given under South Carolina law by licensed attorneys."  *In re Fleming*, C/A No. 17-05544-jw, slip op. * 5 (Bankr. D.S.C. Feb. 22, 2018).  *See also In re Banner*, 2016 Bankr. LEXIS 2214 *22-27 (Bankr. W.D.N.C. 2016).

---

[31]  Rule 5.5 of the South Carolina Rules of Professional Conduct limits the practice of law of an attorney not licensed in this jurisdiction.  Rule 83.I.02 of the District Court of South Carolina Local Rules requires that for an attorney to be eligible for admission to the bar of this court, the person must be a member in good standing of the bar of the South Carolina Supreme Court. Rule 83.I.05 sets forth the requirements for appearances by attorneys not admitted in the District and requires a motion, other pleadings, and a fee.

Similar to the findings in the *Green* case, in this case, Recovery Law's business model used its website to assert its vast experience and ability to provide services personalized to the debtor in soliciting clients.  Recovery Law then had attorneys not admitted to practice before the Court and/or non-attorney personnel not supervised by an attorney licensed to practice before the Court[32] perform the following services: obtain a retainer agreement with the debtor for bankruptcy services,[33] collect fees for such services, provide consultation to the debtor regarding his financial situation, advise the debtor regarding the bankruptcy process, advise the debtor regarding the chapter under which to file, and complete an initial draft of his petition, schedules, and statements.  Recovery Law's involvement of Attorney after these various services had occurred did not absolve or cure the unauthorized practice of law.

The disclosure of compensation filed in this case is also inaccurate and incomplete.  The Disclosure of Compensation filed by Attorney reflects that he agreed to accept $1,500 for legal services, and he had received $1,500 prior to the bankruptcy filing (the "Disclosure").  The Disclosure does not identify Recovery Law or Attorney's association with Recovery Law.  However, item 16 of the statement of financial affairs shows Recovery Law was paid $1,835 by the debtor in 2020.   Similarly, Attorney's information on the Petition does not disclose the association of Recovery Law in this case.

The Disclosure provides that the legal services for the disclosed fee include analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a petition in bankruptcy, and preparation of the required petition, schedules, and statements.  The Disclosure does not indicate that any services are excluded from the fee.  The evidence shows

---

[32] *See In re Driggers*, 2021 Bankr. LEXIS 1423 *27, C/A No. 20-03239-dd, slip op., (Bankr. D.S.C. May 25, 2021).

[33] Attorney and Recovery Law have failed to produce a retainer agreement despite requests by the UST to provide a copy.

that an attorney not admitted to practice before the Court and/or non-attorney personnel not
supervised by an attorney admitted to practice before this Court provided some of those services.
Thus, the Disclosure is inaccurate and incomplete.

Bankruptcy courts have broad discretion under § 329(b) to disallow and require the return
of excessive fees.  Recovery Law has the burden to show that the fees charged to the debtor are
reasonable.  The fees paid to Recovery Law are excessive and the disclosures fall short of
providing accurate information.  The retainer agreement between the debtor and Recovery Law
is cancelled and Recovery must return all fees paid by the debtor or paid on behalf of the debtor.

**Debt Relief Agency Provisions**

Section 526 provides that a debt relief agency[34] shall not:

(1) fail to perform any service that such agency informed an assisted person[35] or
    prospective assisted person it would provide in connection with a case or
    proceeding under this title;

(2)  make any statement, or counsel or advise any assisted person or prospective
    assisted person to make a statement in a document filed in a case or
    proceeding under this title, that is untrue or misleading, or that upon the
    exercise of reasonable care, should have been known by such agency to be
    untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or
    indirectly, affirmatively or by material omission, with respect to –

    (A)  the services that such agency will provide to such person; or

    (B)  the benefits and risks that may result if such person becomes a
        debtor in a case under this title.

---

[34] "Debt relief agency" is defined in § 101(12A) as "any person who provides any bankruptcy
assistance to an assisted person in return for payment of money or other valuable consideration,
or who is a bankruptcy petition preparer under section 110."  Section 101(12A) contains
exclusions from its definition, none of which are applicable here.
[35] "Assisted person" is defined in § 101(3) as "any person whose debts consist primarily of
consumer debts and the value of whose nonexempt property is less than $204,425."

§ 526(a)(1) – (3).  As a debt relief agency, an attorney is required, within five (5) days after first

providing services and before the filing of the bankruptcy petition, to execute a written contract

that explains clearly and conspicuously, the services an attorney will provide to the debtor and

the fees or charges for such agreement and the terms of payment.  § 528(a)(1).  It is clear that

Recovery Law is a debt relief agency and the debtor is an assisted person.

Recovery Law violated § 526(a)(1) by failing to perform services it promised it would

provide through an experienced attorney who is admitted to practice before the Court.  Prior to

speaking with Attorney, the debtor had retained Recovery Law for bankruptcy services, paid the

fees for such services, received consultation regarding his financial situation, was advised

regarding the bankruptcy process, was advised regarding the chapter under which to file, and had

an initial draft of his petition, schedules, and statements completed.  All of these services were

provided by an attorney not admitted to practice before the Court or non-attorney personnel not

supervised by an attorney licensed to practice before the Court.  Additionally, Recovery Law's

online advertisement at the time stated the services were provided by a local bankruptcy expert.

These actions are also violative of § 526(a)(3)(A).

Recovery Law violated § 526(a)(2) by failing to perform a reasonable inquiry to

determine that the information included in the Petition and Original Schedules were true and

correct.  In this case, appropriate questions were not made to the debtor regarding the

information in the Petition and Original Schedules, including the address at which the debtor

lived at the time of the bankruptcy filing.  A review of publicly available information, which can

be assessed at no charge and required minimal time, was not undertaken.  The financial

documents required to be provided to the trustee either were not received prior to the filing of the

debtor's case or were not reviewed before the debtor's case and the bankruptcy documents were

filed.  A review of the Petition and Original Schedules was not completed to determine any

internal inconsistencies.

Additionally, the Amended Petition and the Amended Statement were filed with the

Court without the debtor's review and signature.  The amendments made to the Petition and

Original Schedules were inconsistent with facts that should have been known at the time the

Amended Petition and Amended Statements were filed.   The Disclosure also contains inaccurate

and misleading information.  The Disclosure provides that Attorney is not affiliated with a law

firm, he received the fees from the debtor, and he provided some services that were provided by

an attorney not admitted to practice before the Court.

Section 526(c)(1) provides that any contract for bankruptcy assistance[36] between a debt

relief agency and an assisted person that does not comply with the material terms of this section

and § 528 shall be void and unenforceable.  Recovery Law has not complied with the material

requirements of § 526(a)(1) – (3).  Accordingly, the retainer agreement between the debtor and

Recovery Law is void and unenforceable.

Section 526(c)(5) provides that if a court finds that a person intentionally violated § 526,

or engaged in a clear and consistent pattern or practice of violating this section, the court may

(A) enjoin the violation of such section, or (B) impose an appropriate civil penalty against such

person.  The conduct of Recovery Law noted in this case is not an isolated incident and there is a

clear and consistent pattern or practice in violating § 526.  The court found similar conduct by

Recovery Law in the *Green* case and in three chapter 13 cases.  Recovery Law continues to file

---

[36]  "Bankruptcy assistance is defined in § 101(4A) as "any goods or services sold or otherwise
provided to an assisted person with the express or implied purpose of providing information,
advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or
appearing in a case or proceeding on behalf of another or providing legal representation with
respect to a case or proceeding under this title."

cases in this District including three cases filed in February 2022.[37]  As noted in the *Green* case,

Recovery Law's business practices provide the blueprint for these problems.  Recovery Law

advertises that it has experienced attorneys who can provide personalized services, but has

attorneys not admitted to practice before the Court provide services to the debtor, then Recovery

Law assigns the case to a local attorney who has limited experience to review the documents and

file them with the Court.  To be clear, Recovery Law's use of an attorney admitted before the

Court to duplicate services already performed by non-admitted attorneys does not cure the

unauthorized practice of law conducted under this "for profit" business model.

Additionally, there is a significant delay between the time when the debtor paid Recovery

Law and the filing of the case, and the time between when the petition, schedules, and statements

were completed and when they were filed.  The debtor became concerned due to the delay.

Material changes occurred during the delay between March 2021 and August 2021.  The debtor

moved, sold his Residence, and had the closing proceeds deposited into a joint bank accountant.

The docket in this case shows that the chapter 7 trustee has filed a complaint against the debtor's

non-filing spouse to recover property.  Recovery Law's actions have resulted in harm to the

debtor, the bankruptcy process, and participants in the bankruptcy system.

The Court finds it appropriate to enjoin Recovery Law from soliciting for filing or filing

any bankruptcy cases in the District of South Carolina.  The Court also finds that civil penalties

are appropriate in this case.

### Section 105 and the Court's Inherent Authority

Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title.  No provision of this title

---

[37]  The UST has two additional pending motions against Recovery Law in the cases of Leonard, C/A 21-01299-hb and Quinn, C/A 21-02640-hb.

providing for the raising of an issue by a party in interest shall be construed to preclude the court

from, *sua sponte*, taking any action or making any determination necessary or appropriate to

enforce or implement court orders or rules, or to prevent an abuse of process." § 105(a).

The Court has the duty and authority to regulate the litigants that appear before it and

address their improper conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *In re

Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997) (holding federal courts' inherent authority to regulate

litigants). This inherent power allows bankruptcy courts to discipline attorneys who appear

before them. *Williams v. Lynch (In re Lewis)*, 611 Fed. Appx. 134, 2015 U.S. App. LEXIS 9597,

at *4 (4th Cir. 2015). Bankruptcy courts have the inherent authority to impose civil sanctions for

abuses of the bankruptcy process. *See In re Ulmer*, 363 B.R. 777 (Bankr. D.S.C. 2007); *Jones v.

Bank of Santa Fe (In re Courtesy Inns Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994).

Additionally, § 105 gives bankruptcy courts the broad power to implement the provisions of the

Bankruptcy Code and to prevent the abuse of the bankruptcy process. *In re Walters*, 868 F.2d at

669; *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *Caldwell v. Unified Capital Corp. (In re

Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996).

Local Rule 9011-1(b) of the District of South Carolina Local Bankruptcy Rules

provides:

> Except as may be provided in a written agreement with the debtor
> concerning appeals and adversary proceedings, the law firm/attorney
> which files the bankruptcy petition for the debtor shall be deemed the
> responsible attorney of record for all purposes including the
> representation of the debtor at all hearings and in all matters arising in
> conjunction with the case, including service, notice and communication
> via CM/ECF and the Federal Rules of Bankruptcy Procedure. In the
> instance that the agreement is between the law firm and the debtor, the
> filing attorney shall be deemed the designated attorney for the law firm.
> Any attorney who files a document on behalf of a creditor or other
> party in interest shall likewise be deemed the responsible attorney for
> all purposes including the representation of the party at any applicable

hearing and in all matters related to the document, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure.

Based on Recovery Law's conduct as outlined in this Order, Recovery Law is also subject to sanction under § 105 and the Court's inherent authority.

IT IS, THEREFORE, ORDERED THAT:

1. the Disclosure filed by Attorney fails to comply with § 329(a) and contains untrue and misleading statements in violation of § 526(a)(2);

2. Recovery Law failed to perform services it informed the debtor it would in connection with his case in violation of § 526(a)(1), and the compensation paid to it exceeds the reasonable value of the services provided pursuant to § 329(b);

3. Pursuant to § 329(b) as well as § 526(c)(1), the retainer agreement between the debtor and Recovery Law is hereby void and cancelled.  Recovery Law shall return all fees paid to Duane Burnett along with a copy of this Order within 14 days of the Order. **Within three days after payment**, Recovery Law shall file a declaration with this Court in the above-captioned case attesting to its compliance with this Order and attaching evidence of the payment ordered herein;

4. Pursuant to § 105(a) and § 526(c)(5)(B) and as a further monetary sanction, Recovery Law is hereby ordered to pay a civil penalty of $25,000 to the US Treasury within 20 days of this Order.  This amount shall be remitted to the UST along with a copy of this Order.  **Within three days after payment**, Recovery Law shall file a declaration with this Court in the above-captioned case attesting to its compliance with this Order and attaching evidence of the payment ordered herein; and

5. Pursuant to § 105(a) and § 526(c)(5)(A) Recovery Law is enjoined from soliciting for filing or filing any bankruptcy cases in the District of South Carolina.  The injunction shall remain in effect until proper application by Recovery Law, a hearing, and a showing by Recovery Law that a member of Recovery Law is admitted to practice before this Court and that Recovery Law is not operating in a manner in which it is engaging in the unauthorized practice of law.

**FILED BY THE COURT**
**03/16/2022**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 03/16/2022